CADES SCHUTTE
A Limited Liability Law Partnership

PATRICIA J. McHENRY    4267-0
ALLISON MIZUO LEE    7619-0
Cades Schutte Building
1000 Bishop Street, Suite 1200
Honolulu, Hawaiʻi 96813-4212
Telephone:(808) 521-9200
Facsimile: (808) 521-9210
Email: pmchenry@cades.com
      alee@cades.com

Attorneys for Defendant
BANK OF AMERICA, N.A and
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| BRADLEY C. BENGE; DENNIS V. BOGDANOV; CHRIS J. FABYONIC; ANDREA L. HENKE; JAMES R. RABAGO; NATALIE L. RABAGO; ROGER RIZZO; BRIAN C. TRAICHEL; MARINA UMNUS; MICHAEL UMNUS; ANDREW ORTEGA; LISA J. VEJAR; AND DAVE M. VEJAR,<br><br>              Plaintiff,<br><br>   v.<br><br>BANK OF AMERICA, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; PAUL WEIS; BOFI FEDERAL BANK; | CIVIL NO. 1:19-cv-00349 (Other Civil Action)<br><br>Removed from Circuit Court of the Second Circuit, State of Hawaiʻi Civil No. No. 19-1-0168 (2)<br><br>**DEFENDANTS BANK OF AMERICA, N.A. AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S NOTICE OF REMOVAL OF ACTION; DECLARATION OF ALLISON MIZUO LEE; EXHIBIT 1 AND EXHIBITS A TO M; CERTIFICATE OF SERVICE** |

MARK H. BUSHLOW; WELLS FARGO
BANK, N.A.; HAWAII 88-01 LLC;
DAVID S. CROW, Individually and as
Trustee of the REVOCABLE TRUST OF
DAVID S. CROW DATED MARCH 23,
2005; SUSANA CROW, Individually and
as Trustee of the REVOCABLE TRUST
OF SUSANA CROW; MING YU YAO;
JAMES C. DYSON; FLORDELIZA C.
DYSON; NAVY FEDERAL CREDIT
UNION; DONALD G. HAMAGUCHI;
DENISE ROUSSET-HAMAGUCHI;
KISHIN HAMAGUCHI; HOMESTREET
BANK; AARON M. RAJIC;
MARCHELLE DICKEY; ANDY S.
TENDLER; JAIME G. ALEJO; ALLEN
L. ALEJO; ATHENS L. ALEJO; MERNA
L. ALEJO; WCS LENDING, LLC;
CHASE G. JOHNSON; DANICA L.
JOHNSON; LOANDEPOT.COM, LLC;
AND DOE DEFENDANTS 1-50,

Defendants.

## DEFENDANTS BANK OF AMERICA, N.A. AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S NOTICE OF REMOVAL OF ACTION

Defendants Bank of America, N.A. ("BANA") and Mortgage Electronic

Registration Systems, Inc. ("MERS"), through their undersigned counsel, hereby

give notice of the removal of *Benge v. Bank of America, N.A.*, *et al.*, Civil No. 19-

1-0168 from the Circuit Court of the Second Circuit, State of Hawaii to the United

States District Court for the District of Hawaii. Removal is based upon 28 U.S.C.

§§ 1332 and 1441.  As grounds for removal, BANA and MERS state as follows:

2

# I. BACKGROUND

## a. Plaintiff Asserts Claims Regarding A 2010 Foreclosure

1. This is one of several multi-plaintiff state court actions filed by individuals who would have been covered under the class definition of a recently-dismissed action, *Degamo v. Bank of America, N.A.*, Civ. No. 1:13-cv-000141-JAO-KJM (D. Haw.). Like the present action, *Degamo* was initially filed in state court then removed to this Court. [*Id.* Dkt. 1.]

2. On March 14, 2019, this Court dismissed *Degamo* on the grounds that the representative plaintiffs lacked standing to bring suit. That ruling is now pending on appeal to the Ninth Circuit. [*Id.* Dkt. 149.] The same counsel represents plaintiffs in both *Degamo* and the state court actions.

3. The nature of the dispute in *Degamo* and the state court actions, including this one, is the same. Plaintiff's Count I (Wrongful Deprivation of Real Property) and Count II (Unfair and Deceptive Acts and Practices) assert claims solely against BANA and, standing alone, would be removable under diversity grounds.

4. Count III (Quiet Title and Ejectment) in this action is new. It asserts a claim against MERS; Paul Weis ("Defendant Weis"); and BofI Federal Bank ("BofI"); Mark H. Bushlow ("Defendant Bushlow"); Hawaii 88-01 LLC ("Hawaii 88-01"); Wells Fargo Bank, N.A. ("Wells Fargo"); David S. Crow, Individually

and as Trustee of the Revocable Trust of David S. Crow dated March 23, 204 and

Susana Crow, Individually and as Trustee of the Revocable Trust of Susana Crow

(the "Crow Defendants"); Ming Yu Yao ("Defendant Yao"); James C. Dyson and

Flordeliza C. Dyson ) (the "Dyson Defendants"); Donald G. Hamaguchi, Denise

Rousset-Hamaguchi, and Kishin Hamaguchi (the "Hamaguchi Defendants");

HomeStreet Bank; Aaron M. Rajic, Marchell E. Dickey, and Andy S. Tendler (the

"Rajic/Dickey/Tendler Defendants"), Jaime G. Alejo, Allen L. Alejo, Athens L.

Alejo, and Merna L. Alejo (the "Alejo Defendants"); WCS Lending, LLC ("WCS

Lending"), Chase G. Johnson and Danica L. Johnson (the "Johnson Defendants");

LoanDepot.com LLC ("LoanDepot") (collectively, the "QTE Defendants").

5.     In an effort to avoid federal court jurisdiction relating to disputes over

the individual plaintiff's foreclosures, Plaintiff brings this case against QTE

Defendants relating to ten of the eleven foreclosures at issue in the case, as

described more fully below and detailed in the chart attached hereto as Exhibit A.

      i.     *Benge Foreclosure*

6.     Defendant Weis is the current owner of the property located at 160

Keonekai Road #7-201, Kihei, Hawaii 96753, TMK No. (2) 3-9-004-134-0057 (the

"Weis Property").  Plaintiff Bradley C. Benge ("Plaintiff Benge") was a prior

owner of the Weis Property, which was encumbered by a mortgage.  When

Plaintiff Benge defaulted on his mortgage, BANA predecessor BAC Home Loans

Servicing, LP ("BACHLS") instituted foreclosure proceedings pursuant to the terms of the mortgage, purchased the property at the non-judicial foreclosure sale on June 10, 2010, and conveyed the property to the Federal National Mortgage Association ("Fannie Mae") by Quitclaim Deed recorded on July 27, 2010. [*See* Exhibits B-1, B-2.] Official land records show that the following conveyance occurred thereafter:

- Fannie Mae conveyed the property to the Defendant Weis by Limited Warranty Deed, recorded on December 23, 2010. [*See* Exhibit B-3.]

Defendant Weis, therefore, acquired the property one transaction removed from the foreclosure. Defendant Weis granted a mortgage to MERS as nominee for BofI, its successors and assigns, secured by the property and recorded on September 12, 2017. [*See* Exhibit B-4.]

ii. *Bogdanov Foreclosure*

7. Defendant Bushlow is the current owner of the property located at 15 Kulanihakoi Street #11E, Kihei, Hawaii 96753, TMK No. (2) 3-9-044-041-0013 (the "Bushlow Property"). Plaintiff Dennis V. Bogdanov ("Plaintiff Bogdanov") was a prior owner of the Bushlow Property, which was encumbered by a mortgage. When Plaintiff Bogdanov defaulted on his mortgage, Countrywide Home Loans Servicing, L.P. instituted foreclosure proceedings pursuant to the terms of the mortgage, purchased the property at the non-judicial foreclosure sale

5

on June 10, 2009, and conveyed the property to Fannie Mae by Quitclaim Deed recorded on August 12, 2009. [*See* Exhibits C-1, C-2.] Official land records show that the following conveyance occurred thereafter:

- Fannie Mae conveyed the property to the Defendant Bushlow by Limited Warranty Apartment Deed, recorded on November 25, 2009. [*See* Exhibit C-3.]

Defendant Bushlow, therefore, acquired the property one transaction removed from the foreclosure. Defendant Bushlow granted a mortgage to Wells Fargo, secured by the property and recorded on November 5, 2013. [*See* Exhibit C-4.]

iii.    *Fabyonic Foreclosure*

8.    Defendant Hawaii 88-01 is the current owner of the property located at 111 Kahului Beach Road #B206, Kahului, Hawaii 96732, TMK No. (2) 3-7-002-018-0133 (the "Hawaii 88-01 Property"). Plaintiff Chris J. Fabyonic ("Plaintiff Fabyonic") was a prior owner of the Hawaii 88-01 Property, which was encumbered by a mortgage. When Plaintiff Fabyonic defaulted on his mortgage, BACHLS instituted foreclosure proceedings pursuant to the terms of the mortgage, purchased the property at the non-judicial foreclosure sale on May 7, 2010, and conveyed the property to the Federal Home Loan Mortgage Corporation ("Freddie Mac") by Quitclaim Deed recorded on July 21, 2010. [*See* Exhibits D-1, D-2.] Freddie Mac conveyed the property to BACHLS by Special Warranty

6

Apartment Deed recorded on October 22, 2010. [*See* Exhibit D-3.] Official land records show that the following conveyance occurred thereafter:

- BACHLS conveyed the property to the Defendant Hawaii 88-01 by Special Warranty Apartment Deed recorded on October 22, 2010. [*See* Exhibit D-4.]

Defendant Hawaii 88-01, therefore, acquired the property two transactions removed from the foreclosure. The First Amended Complaint ("FAC") does not allege that a mortgage encumbers the property.

iv. *Henke Foreclosure*

9. According to public records, non-parties Nicolas Quezada, Elsa Quezada, Rafael Quezada (the "Quezadas"), and David Shaghasi are the current owners (fee and leasehold) of the property located at 3676 Lower Honoapiilani Road #D-202, Lahaina, Hawaii 96761, TMK No. (2) 4-4-001-038-0041 (the "Quezada/Shaghasi Property"). Plaintiff Andrea L. Henke ("Plaintiff Henke") was a prior owner of the leasehold interest in the Quezada/Shaghasi Property, which was encumbered by a mortgage. When Plaintiff Henke defaulted on her mortgage, BACHLS instituted foreclosure proceedings pursuant to the terms of the mortgage, purchased the foreclosed interest in the property at the non-judicial foreclosure sale on May 12, 2010, and conveyed that interest in the property to Freddie Mac by Quitclaim Deed recorded on September 28, 2010. [*See* Exhibits E-1, E-

7

2.]    Freddie Mac assigned the leasehold interest to Eliel Martinez and Silvia Monroy pursuant to Assignment of Apartment Lease recorded on January 30, 2012, who in turn assigned their interest to David Shaghasi pursuant to an Assignment of Apartment Lease recorded on August 25, 2015.  [See Exhibits E-4, E-5].  Transfers of the fee interest subsequent to the foreclosure apparently resulted in non-parties the Quezadas ownership of the fee interest in the property.  [*See* Exhibits E-3, E-6.]  The FAC does not allege that a mortgage encumbers the property.

v.    *Rabago Foreclosure*

10.    The Crow Defendants are the current owners of the property located at 323 Kamalei Circle, Kahului, Hawaii 96732, TMK No. (2) 3-8-087-030-0000 (the "Crow Property").  Plaintiffs James R. Rabago and Natalie L. Rabago (the "Rabago Plaintiffs") were prior owners of the Crow Property, which was encumbered by a mortgage.  When the Rabago Plaintiffs defaulted on their mortgage, BACHLS instituted foreclosure proceedings pursuant to the terms of the mortgage and purchased the property at the non-judicial foreclosure sale on April 4, 2011.  [*See* Exhibits F-1, F-2.]  Official land records show that the following conveyances occurred thereafter:

- BACHLS conveyed the property to the Defendants David S. Crow and Susana Crow by Special Warranty Deed, recorded on December 30, 2011.  [*See* Exhibit F-3.]

- Defendants David S. Crow and Susana Crow conveyed the property to the Crow Defendants by Quitclaim Deed recorded on July 2, 2012. [*See* Exhibit F-4.]

The Crow Defendants, therefore, acquired the property one and two transactions removed from the foreclosure. The FAC does not allege that a mortgage encumbers the property.

### vi.    *Rizzo #7B Foreclosure*

11.    Defendant Yao is the current owner of the property located at 70 Halili Lane #7B, Kihei, Hawaii 96753, TMK No. (2) 3-9-001-160-0058 (the "Yao Property").  Plaintiff Roger Rizzo ("Plaintiff Rizzo") was a prior owner of the Yao Property, which was encumbered by a mortgage.  When Plaintiff Rizzo defaulted on his mortgage, BANA instituted foreclosure proceedings pursuant to the terms of the mortgage and purchased the property at the non-judicial foreclosure sale on February 26, 2010.  [*See* Exhibits G-1, G-2.]  Official land records show that the following conveyances occurred thereafter:

- BANA conveyed the property to Gary Alan Hall and Karan Sue North by Limited Warranty Deed, recorded on July 9, 2010. [*See* Exhibit G-3.]

- Gary Alan Hall and Karan Sue North conveyed the property to Defendant Yao by Apartment Deed recorded on September 23, 2013. [*See* Exhibit G-4.]

Defendant Yao, therefore, acquired the property two transactions removed from the foreclosure. The FAC does not allege that a mortgage encumbers the property.

### vii. *Rizzo #8D Foreclosure*

12. The Dyson Defendants are the current owners of the property located at 80 Halili Lane #8D, Kihei, Hawaii 96753, TMK No. (2) 3-9-001-160-0066 (the "Dyson Property"). Plaintiff Rizzo was a prior owner of the Dyson Property, which was encumbered by a mortgage. When Plaintiff Rizzo defaulted on his mortgage, BACHLS instituted foreclosure proceedings pursuant to the terms of the mortgage, purchased the property at the non-judicial foreclosure sale on August 16, 2010, and conveyed the property to Fannie Mae by Quitclaim Deed recorded on September 21, 2010. [*See* Exhibits H-1, H-2.] Official land records show that the following conveyances occurred thereafter:

- Fannie Mae conveyed the property to Helen Price and William Heyman by Apartment Deed recorded on March 24, 2011. [*See* Exhibit H-3.]

- Helen Price (widowed) conveyed the property to the Dyson Defendants by Apartment Deed recorded on August 1, 2016. [*See* Exhibit H-4.]

The Dyson Defendants, therefore, acquired the property two transactions removed from the foreclosure. The Dyson Defendants granted a mortgage to Navy Federal Credit Union, secured by the property and recorded on August 1, 2016. [*See* Exhibit H-5.]

        viii.   *Rizzo #8G Foreclosure*

13. The Hamaguchi Defendants are the current owners of the property located at 80 Halili Lane #8G, Kihei, Hawaii 96753, TMK No. (2) 3-9-001-160-0069 (the "Hamaguchi Property"). Plaintiff Rizzo was a prior owner of the Hamaguchi Property, which was encumbered by a mortgage. When Plaintiff Rizzo defaulted on his mortgage, BACHLS instituted foreclosure proceedings pursuant to the terms of the mortgage, purchased the property at the non-judicial foreclosure sale on August 25, 2010, and conveyed the property to Fannie Mae by Quitclaim Deed recorded on September 24, 2010. [*See* Exhibits I-1, I-2.] Official land records show that the following conveyance occurred thereafter:

- Fannie Mae conveyed the property to the Hamaguchi Defendants by Apartment Deed recorded on March 22, 2011. [*See* Exhibit I-3.]

The Hamaguchi Defendants, therefore, acquired the property one transaction removed from the foreclosure. The Hamaguchi Defendants granted a mortgage to MERS as nominee for HomeStreet Bank, its successors and assigns, secured by the property and recorded on March 22, 2011. [*See* Exhibit I-4.]

ix.     *Traichel Foreclosure*

14.     The Rajic/Dickey/Tendler Defendants are the current owners of the property located at 715 S. Kihei Road #127, Kihei, Hawaii 96753, TMK No. (2) 3-9-001-107-0027 (the "R/D/T Property"). Plaintiff Brian C. Traichel ("Plaintiff Traichel") was a prior owner of the R/D/T Property, which was encumbered by a mortgage. When Plaintiff Traichel defaulted on his mortgage, BACHLS instituted foreclosure proceedings pursuant to the terms of the mortgage, purchased the property at the non-judicial foreclosure sale on October 28, 2009, and conveyed the property to Fannie Mae by Quitclaim Deed recorded on February 8, 2010. [*See* Exhibits J-1, J-2.] Fannie Mae conveyed the property to BACHLS by Quitclaim Deed recorded on April 20, 2011. [*See* Exhibit J-3.] Official land records show that the following conveyance occurred thereafter:

12

- BACHLS conveyed the property to the Rajic/Dickey/Tendler Defendants by Limited Warranty Apartment Deed recorded on June 16, 2011.  [*See* Exhibit J-4.]

The Rajic/Dickey/Tendler Defendants, therefore, acquired the property two transaction removed from the foreclosure.  The FAC does not allege that a mortgage encumbers the property.

        x.    *Umnus/Ortega Foreclosure*

15.    The Alejo Defendants are the current owners of the property located at 648 Onehee Avenue, Kahului, Hawaii 96732, TMK No. (2) 3-8-035-016-0000 (the "Alejo Property").  Plaintiffs Marina Umnus, Michael Umnus, and Andrew Ortega (the "Umnus/Ortega Plaintiffs") were prior owner of the Alejo Property, which was encumbered by a mortgage.  When the Umnus/Ortega Plaintiffs defaulted on their mortgage, BACHLS instituted foreclosure proceedings pursuant to the terms of the mortgage, purchased the property at the non-judicial foreclosure sale on May 11, 2010, and conveyed the property to Fannie Mae by Quitclaim Deed recorded on July 27, 2010.  [*See* Exhibits K-1, K-2.]  Official land records show that the following conveyance occurred thereafter:

- Fannie Mae conveyed the property to the Alejo Defendants by Limited Warranty Deed recorded on September 27, 2011.  [*See* Exhibit K-3.]

ImanageDB:4919910.3

The Alejo Defendants, therefore, acquired the property one transaction removed from the foreclosure. The Alejo Defendants granted a mortgage to MERS as nominee for WCS Lending, its successors and assigns, secured by the property and recorded on September 27, 2011. [*See* Exhibit K-4.]

xi. *Vejar Foreclosure*

16. The Johnson Defendants are the current owners of the property located at 4955 Hanawai Street #9-102, Lahaina, Hawaii 96761, TMK No. (2) 4-3-003-108-0070 (the "Johnson Property"). Plaintiffs Lisa J. Vejar and Dave M. Vejar (the "Vejar Plaintiffs") were prior owner of the Johnson Property, which was encumbered by a mortgage. When the Vejar Plaintiffs defaulted on their mortgage, BANA predecessor, Countrywide Bank, FSB, instituted foreclosure proceedings pursuant to the terms of the mortgage, purchased the property at the non-judicial foreclosure sale on March 12, 2010, and conveyed the property to BANA by Quitclaim Deed recorded on March 29, 2011. [*See* Exhibits L-1, L-2.] Official land records show that the following conveyances occurred thereafter:

- BANA conveyed the property to the Josh W. Johnson and Trachele M. Johnson by Apartment Deed recorded on April 29, 2011. [*See* Exhibit L-3.]

- Josh W. Johnson and Trachele M. Johnson conveyed the property to the Johnson Defendants by Apartment Deed recorded on January 14, 2016. [*See* Exhibit L-4.]

The Johnson Defendants, therefore, acquired the property two transactions removed from the foreclosure. The Johnson Defendants granted a mortgage to MERS as nominee for LoanDepot, its successors and assigns, secured by the property and recorded on August 17, 2017. [*See* Exhibit L-5.]

**b. Plaintiff Brings Claims Against A Bona Fide Purchaser And His Mortgagees And Nominees**

17. Plaintiff asserts Count III (Quiet Title and Ejectment) against the QTE Defendants, who consist of the current property owners and their respective mortgagees of record and principal mortgagee nominees (except for Plaintiff Henke's claims where no such defendants are named).

18. As demonstrated by the chart attached hereto as Exhibit A, Plaintiff and QTE Defendants are citizens of various states and countries.

**II. APPLICABLE STANDARD**

19. A civil action brought in state court may be removed to a United States District Court based on, among other things, diversity of citizenship. 28 U.S.C. §§ 1441, 1332(a).

20. In this case, a portion of the QTE Defendants' citizenship is not diverse. BANA asserts that removal is appropriate on the basis of diversity

15

jurisdiction on the grounds there is misjoinder and fraudulent joinder of the QTE Defendants.

### a.    Fraudulent Misjoinder

21.    Removal is appropriate when parties have been misjoined. *See, e.g.*, *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996) (affirming denial of motion to remand, explaining that "Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder"); *Tomlinson v. Deutsche Bank Nat. Tr. Co.*, No. CV 13-00554 SOM-BMK, 2014 WL 346922, at *8 (D. Haw. Jan. 30, 2014), *report and recommendation adopted*, No. CV 13-00554 SOM-BMK, 2014 WL 607772 (D. Haw. Feb. 18, 2014); *see also In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002) ("[I]t might be concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction."); *California Dump Truck Owners Ass'n v. Cummins Engine Co., Inc.*, 24 F. App'x 727, 729 (9th Cir. 2001) (assuming that the Ninth Circuit would accept the doctrines of fraudulent and egregious joinder).

22.    Parties are misjoined where the claims against non-diverse parties do not share common questions of law or fact. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) ("A plaintiff is misjoined when his right to relief does not arise out of the same transaction and occurrence *and* the same question of law or fact common to all plaintiffs does not arise in the action." (citing Fed. R.

ImanageDB:4919910.3

Civ. P. 20(a)) (emphasis added); *Palermo v. Letourneau Techs., Inc.*, 542 F. Supp. 2d 499, 511–512 (S.D. Miss. 2008) (finding misjoinder because claims against defendants were separate and distinct, and there was no common question of law or fact concerning proximate cause or damage).

23.     Pursuant to Rule 20 of the Federal Rules of Civil Procedure, in order for plaintiffs or defendants to be properly joined, two requirements must be met: "(1) the plaintiffs assert [ ] a right to relief arising out of the same transaction and occurrence, and  (2) some question of law or fact common to all the plaintiffs will arise in the action." *Palermo*, 542 F. Supp. 2d at 511–512.  Further, "[e]ven once these requirements are met, a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Id.* (quoting *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)).

**b.     Fraudulent Joinder**

24.     In determining whether there is diversity of citizenship, the court ignores those defendants who have been fraudulently joined. *Morris v. Princess Cruises, Inc.*, 263 F.3d 1061, 1067 (9th Cir. 2001).  Joinder is fraudulent "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987); *see also Roehrig v. Tong*, 2006 WL

17

897589 at *2 (D. Haw. April 3, 2006) (denying motion to remand where Hawaii law precluded claim against non-diverse defendant).

25.     The removing defendant is entitled to present evidence beyond the allegations of the complaint to establish fraudulent joinder. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).

## III.     PLAINTIFFS AND THE QTE DEFENDANTS WERE MISJOINED

### a.  Plaintiffs Have Been Misjoined

26.     Plaintiffs' claims, which are based on distinct and factually diverse foreclosures, loans, and properties, are misjoined.

27.     Had the claims relating to three of the eleven challenged foreclosure transactions been properly filed as the subjects of separate actions, the cases would be fully diverse, without the need to consider fraudulent joinder.  Specifically, and as demonstrated by the chart in Exhibit A, the Defendants and Plaintiff(s) relevant to (1) Plaintiff Henke, (2) Plaintiff Rizzo and the Yao Property, and (3) Plaintiff Traichel and the R/D/T Property, respectively, are alleged to be citizens of different states, and the Defendants are not citizens of Hawaii.  As such, the cases involving these three properties would have been removable if filed as separate actions.  Instead, Plaintiffs joined claims against QTE Defendants that would thwart diversity of citizenship.  On this basis alone, this Court should sever the

ImanageDB:4919910.3

claims of Plaintiffs and retain jurisdiction as to those three properties that involve completely diverse parties and non-local defendants.

28.     Regardless of citizenship, Plaintiffs' claims do not arise out of the same transaction and occurrence and the same question of law or fact.  "A plaintiff is misjoined when his right to relief does not arise out of the same transaction and occurrence and the same question of law or fact common to all plaintiffs does not arise in the action."  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (citing Fed. R. Civ. P. 20(a)) (emphasis added).

29.     Pursuant to Rule 20 of the Federal Rules of Civil Procedure, in order for plaintiffs to be properly joined, two requirements must be met: "(1) the plaintiffs assert [ ] a right to relief arising out of the same transaction and occurrence, and (2) some question of law or fact common to all the plaintiffs will arise in the action."  *Id.*  Further, "[e]ven once these requirements are met, a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side."  *Id.* (quoting *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)).

30.     Here, Plaintiffs' claims arise out of BANA's foreclosures on their individual, unrelated mortgage loans.  The foreclosures occurred from 2009 through 2011.  Each foreclosure presents unique factual circumstances that will require the Court to make individual factual determinations for each Plaintiff.  For

example, the Court will have to conduct individualized inquiries into each foreclosure sale to determine whether the conduct of any particular foreclosure procedure reduced the equity in their home. The allegations in the Complaint would also require the Court to make a series of factual determinations for each Plaintiff, including, but not limited to, the language in each Plaintiff's mortgage documents concerning remedies for default, the actions and inactions of the specific foreclosure counsel handling the foreclosure, the contents and timing of the notice of sale, whether or not the notice of sale was posted on the property in question, the method of publication of any postponements, whether the plaintiff specifically requested postponement in the context of loss mitigation, the location of the auction (and any change thereto), the conduct and outcome of each auction, the alleged cause of any damages, and the amount and type of damages suffered, if any. *See, e.g.*, FAC ¶¶ 20, 21 (alleging that the original publication allegations only apply to Plaintiff Henke and the change of location allegations only apply to Plaintiff Rizzo).

31. There will likewise be individualized defenses to each of Plaintiffs' claims. For example, to the extent any of Plaintiffs filed for bankruptcy since the foreclosure, there will be complex and individualized issues of standing for the Court to consider, which formed the basis of the court's dismissal in the *Degamo* action. Additionally, some of the Plaintiffs' claims under Hawai'i's unfair and

deceptive acts and practices statute are barred by the applicable four year statute of limitations. Furthermore, if any of the Plaintiffs purchased their properties for commercial use, those Plaintiffs are not consumers for the purposes of their UDAP claim. These differences—which represent just the tip of the iceberg— demonstrate a need for particularized factual analysis of each Plaintiff's individual case.

32. Plaintiffs' counsel and Plaintiff Rizzo previously filed other individual suits, which involved separate islands and significant factual distinctions, thereby acknowledging the notable differences associated with these types of claims. *See, e.g.*, *Lynch v. Bank of New York Mellon*, Civil No. 17-00195 LEK-RLP (D. Haw.); *In re Ho*, Adv. Pro. No. 16-90033 (Bankr. D. Haw.); *In re Gibbs*, Adv. Pro. No. 14-AD-90035 (Bankr. D. Haw.); *Rizzo v. Bank of New York Mellon*, Civil No. 16-1-0494, Second Circuit of the State of Hawaii.

33. Accordingly, Plaintiffs' bare allegations that "all the Plaintiffs are the victims of a single common scheme or plan" are insufficient to characterize their "right to relief [as] arising out of the same transaction and occurrence." Nothing unites the Plaintiffs but "the superficial similarity of their allegations and their common choice of counsel." *Visendi v. Bank of America, N.A.*, 733 F.3d 863, 870 (9th Cir. 2013) (considering a case involving "100 distinct loan transactions" with many lenders, and noting that "[w]hile Plaintiffs allege in conclusory fashion that

ImanageDB:4919910.3

Defendants' misconduct was 'regular and systematic,' their interactions with Defendants were not uniform. Factual disparities of the magnitude alleged are too great to support permissive joinder").  Instead, Plaintiffs' Complaint alleges only that BANA and the QTE Defendants violated the same law in a comparable way.  *See id*. at 871 ("Plaintiffs merely allege that Defendants violated the same laws in comparable ways.  Rule 20(a) requires more." (citation omitted)).

### b.  The QTE Defendants Have Been Misjoined

34.    Similarly, the QTE Defendants were misjoined. Like joinder of plaintiffs, Rule 20 of the Federal Rules of Civil Procedure provides that two requirements must be met for joinder of defendants: the right to relief must arise out of the same transaction or occurrence *and* there must be a question of law or fact common to all defendants. Fed. R. Civ. P. 20(b).  The claim against the QTE Defendants does not arise out of the same transaction or occurrence *and* share the same question of law or fact.  *See Ashworth v. Albers Med., Inc.*, 395 F. Supp. 2d 395, 412 (S.D. W. Va. 2005) (severing and remanding fraudulently misjoined claims brought against non-diverse defendant while retaining jurisdiction over other claims).

35.    As set forth above, none of the QTE Defendants purchased their respective properties at the foreclosure sale.  Rather, the QTE Defendants acquired the subject properties at various points removed from the alleged wrongful

foreclosure, at different dates, and under different circumstances and thus do not arise out of the same transaction or occurrence. The associated lenders also obtained their interests in the properties through downstream mortgages.

36.     Moreover, the quiet title claim against the QTE Defendants necessarily rests on Plaintiffs' request for "return of title and possession" of the properties (FAC ¶ 51) and a finding that the foreclosure be unwound (*id.* ¶ 53). This claim is not properly joined with a lawsuit against co-Defendant BANA. Plaintiffs' rescission-based remedy against BANA (a necessary prerequisite to Plaintiffs' claim against QTE Defendants) was never a part of the *Degamo* action and therefore barred under a six year statute of limitations. *See Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) (where a claim "is a new legal theory depending on different facts, not a new legal theory depending on the same facts," the amendment does not relate back under Rule 15(c)); *Degamo*, Dkt. 147 at 19 n.7 ("Plaintiffs needed this action to continue proceeding to ensure that the proposed plaintiffs' claims could relate back to the original complaint pursuant to FRCP 15(c).").

37.     Had the claims against QTE Defendants been properly filed as the subjects of separate actions, the case against BANA would be fully diverse, without the need to consider fraudulent joinder.  Instead, Plaintiffs joined claims against QTE Defendants that would thwart diversity of citizenship.

38.     Because Plaintiffs and the QTE Defendants have been egregiously misjoined and removal is appropriate, to the extent that this Court does not find that the QTE Defendants were fraudulently joined, as discussed below, BANA and MERS ask the Court to sever the artificially joined claims of Plaintiffs and the QTE Defendants and permit appropriate exercise of federal jurisdiction over Claims I and II against BANA.  *See, e.g.*, *Greene v. Wyeth*, 344 F. Supp. 2d 674, 685 (D. Nev. 2004) (severing and remanding fraudulently misjoined claims brought against non-diverse defendants while retaining jurisdiction over other claims); *see also Palermo v. Letourneau Techs., Inc.*, 542 F. Supp. 2d 499, 525 (S.D. Miss. 2008) (finding fraudulent misjoinder and severing claims against non-diverse defendants); *Ashworth*, 395 F. Supp. 2d at 412 (severing and remanding fraudulently misjoined claims brought against non-diverse defendant while retaining jurisdiction over other claims).

## IV.   <u>THE QTE DEFENDANTS ARE FRAUDULENTLY JOINED</u>

39.     The QTE Defendants have also been fraudulent joined.

40.     This Court has diversity jurisdiction under 28. U.S.C. § 1332. Plaintiffs allege they are citizens of California, Hawaii, Minnesota, Puerto Rico, Nevada, and Texas, whereas BANA is a citizen of North Carolina where it maintains its principal office for citizenship purposes. [FAC ¶¶ 3–4.]

24

41.    Plaintiff names "Doe Defendants" but these are disregarded for purposes of diversity jurisdiction.  *See, e.g., Carroll v. Hilton*, 2015 WL 1863054 (D. Haw. Apr. 22, 2015).

42.    The court may ignore, for diversity purposes, the claims against remaining defendants (*i.e.* the QTE Defendants) because they are fraudulently joined.  While section 1332 requires complete diversity of citizenship, "one exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'"  *Morris*, 263 F.3d at 1067.

43.    Count III of the FAC obviously fails as to all QTE Defendants because Plaintiffs cannot establish that they "have a substantial interest in the propert[ies] and that [their] title is superior to that of the defendants" and the QTE Defendants therefore cannot be deprived of title under settled Hawaii law.  *KaʻUpulehu Land LLC v. Heirs & Assigns of Pahukula*, 136 Hawaiʻi 123, 137, 358 P.3d 692, 706 (2015).

44.    As the lienholders of bona fide purchasers, BofI, MERS, Wells Fargo, Navy Federal Credit Union, HomeStreet, WCS Lending, and LoanDepot are standing in the shoes of the homeowners who acquired the homes as bona fide purchasers.

45.    Here, Plaintiffs cannot establish that their interest in the underlying properties is superior to the QTE Defendants because they waived any right to

return of the properties by failing to seek rescission in *Degamo* and now those claims are time-barred. *See Williams v. Boeing Co.,* 517 F.3d 1120, 1133 (9th Cir. 2008) (where a claim "is a new legal theory depending on different facts, not a new legal theory depending on the same facts," the amendment does not relate back under Rule 15(c)); *Degamo*, Dkt. 147 at 19 n.7 ("Plaintiffs needed this action to continue proceeding to ensure that the proposed plaintiffs' claims could relate back to the original complaint pursuant to FRCP 15(c)."). *Compare Carpenter*, Dkt. 1-2 at 35–37 (seeking rescissory-based damages) and *Fergerstrom v. PNC Bank, N.A.*, Civil No. 1:13-cv-00526-DKW-RLP, Dkt. 88 at 5–6 (D. Haw. May 1, 2018) (allowing putative class plaintiffs to amend the complaint to include "rescissory or equitable damages intended to be equivalent to restoration of title and possession.") *with Degamo*, Dkt. 14 (First Amended Complaint) (demonstrating an absence of prayer for rescissory-based damages), *Boyd* Am. Compl. at Prayer for Relief, ¶ 1 (seeking "restitution, rescissory, and other equitable damages").

46.    As a result, Plaintiffs have elected a theory of recovery for their wrongful foreclosure claim that limits them to money damages as opposed to an interest in the property Accordingly, Plaintiffs' rights are not superior to the QTE Defendants, and their quiet title and ejectment claim obviously fails.

47.    Furthermore, as to the QTE Defendants' status, the Hawaii Supreme Court has held in at least three separate cases that the former owner suing on a

26

wrongful foreclosure claim cannot eject the current property owner if the current property owner is a bona fide purchaser for value, regardless of whether a foreclosure is characterized as "void" or "voidable." *Seegers v. CIT Bank N.A.*, 2018 WL 1558550, at *7 (D. Haw. Feb. 28, 2018) (citing *Mount v. Apao*, 139 Haw. 167, 180, 384 P.3d 1268, 1281 (2016)); *Bank of New York Mellon v. R. Onaga, Inc.*, 140 Haw. 358, 400, 400 P.3d 559, 560 (2017) (upholding the sale of property to a bona fide purchaser in the context of a challenged judicial foreclosure); *Santiago v. Tanaka*, 137 Haw. 137, 158, 366 P.3d 612, 633 (2016) ("[I]f the property has passed into the hands of an innocent purchaser for value, an action at law for damages is generally the appropriate remedy.") (citing 123 Am. Jur. Proof of Facts 3d §31)); *Kondaur Capital Corp. v. Matsuyoshi*, 136 Haw. 227, 240, 361 P.3d 454, 467 (2015).[1]

---

[1] In April 2019, Magistrate Judge Richard L. Puglisi considered this argument in a matter filed by Plaintiffs' counsel against PNC Bank. *See Schnute v. PNC Bank, N.A., et al.*, Civil No. 19-00022 SOM-RLP, Dkt. 28 (D. Haw. Apr. 12, 2019). Judge Puglisi denied the plaintiffs' motion to remand, holding that the case was removable on grounds of diversity as the plaintiffs' claim against the current property owners obviously failed under Hawaii law.

Though there have been recent remand orders in other cases (*e.g.*, *Penny, et al. v. PNC Bank, N.A., et al.*, Civil No. 1:19-cv-00006-JMS-KJM, Dkt. 43 (D. Haw. May 23, 2019); *Carpenter, et al. v. PNC Bank, N.A., et al.*, Civil No. 1:19-cv-0056-LEK-RT, Dkt. 37 (D. Haw. May 22, 2019)), these decisions are distinguishable. Here, Plaintiffs cannot establish that their interest in the underlying properties is superior to the QTE Defendants' title, as a matter of law, since Plaintiffs never sought rescission of the foreclosures in *Degamo* and have therefore waived such right to relief (which is now time-barred). Likewise, as discussed further below,

ImanageDB:4919910.3

48.　　Hawaii law defines a non-bona fide purchaser as "one who does not pay adequate consideration, takes with knowledge that his transferor acquired title by fraud, or buys registered land with full notice of the fact that it is in litigation between the transferor and a third party." *Kondaur*, 361 P.3d at 467 n.27 (*citing Akagi v. Oshita*, 33 Haw. 343, 347 (1935); *Achiles v. Cajigal*, 39 Haw. 493, 499 (1952) (alterations omitted)).

49.　　The sole attempt by Plaintiff to raise a question as to bona fide purchaser status of the respective QTE Defendants is to allege they were on "inquiry notice" of the wrongful foreclosure by virtue of factual information in the publicly recorded Mortgagee's Foreclosure Affidavits. [*See* FAC ¶¶ 58–61.]

50.　　Plaintiff's "inquiry notice" argument is belied by Plaintiff's Counsel's own representations to this Court in *Degamo*, in which he explicitly argued that his own clients had no notice of the alleged wrongful foreclosures for years after the foreclosure took place. [*Degamo*, Dkt. No. 127-1 at (Motion to Accept Ratification).] In particular, he argued that his clients could not be aware of the underlying facts or law that rendered the foreclosure wrongful, highlighting the

---

the majority of the QTE Defendants were removed from the foreclosure auctions by numerous subsequent transactions, thus rendering "inquiry notice" inapplicable. Indeed, counsel for Plaintiffs conceded in the *Degamo* action that as a practical matter, inquiry notice would be unreasonable under these circumstances. This was not considered in the recent remands. Finally, as set forth above, Plaintiffs misjoined their claims, which was also not considered in the recent remand briefing or orders.

unreasonableness of requiring constructive notice of a wrongful foreclosure.  In his words:

> So short of [the plaintiffs] actually going down to the bureau, having the presence of mind and the suspicion to say, "I'm going to go look at the affidavit, I'm going to read it and see what they did," and then realize that the initially published date was postponed and that the postponed dates wasn't published, and that the power of sale requires publication, to put all that together, on 80-year-old lay people, when the Ninth Circuit standard is "what is their subject state of mind," I just don't think there is an issue, Your Honor.

[*Degamo*, Hearing on Motion to Accept Ratification, Tr. at 54:4–13.]

51.    Plaintiff's "constructive notice" argument has also been rejected by this Court.  In particular, this Court has repeatedly held—in the specific context of wrongful foreclosure suits just like this one—that *Santiago* and *Mount* preclude any action for ejectment as to bona fide purchasers for value, and that purchasers are bona fide even where there are recorded documents sufficient to determine the supposed wrongful postponement of the foreclosure auction as alleged here.  *See, e.g.*, *Tilley v. Bank of New York Mellon*, 2018 WL 1415171, at *13 (D. Haw. Mar. 21, 2018), *appeal dismissed*, 2018 WL 5269236 (9th Cir. July 30, 2018) ("There is nothing on the face of the Foreclosure Affidavit, Notice of Sale, and Mortgage that would have provided the [subsequent real property purchaser] with constructive notice of BONY's alleged wrongdoing."); *Lynch v. Bank of New York Mellon*, 2017 WL 3568667, at *4–5 (D. Haw. Aug. 15, 2017) (holding that constructive

29

notice based on foreclosure affidavit is insufficient, and that to be viable, the complaint must allege purchasers "took title without paying adequate consideration; took title with knowledge that [seller] acquired title by fraud; or had notice of litigation between Plaintiffs and [seller] regarding the Property."); *accord Seegers*, 2018 WL 1558550, at \*6; *Paresa v. HSBC Bank USA*, N.A., No. CV 17-00248 DKW-RLP, 2018 WL 4265157, at \*6 n.5 (D. Haw. Sept. 6, 2018).  Hawaii law likewise has not recognized inquiry notice in this context.

52.    Furthermore, none of the current property owners acquired the subject properties at the foreclosure sales at issue.  [*See* Exhibit A (Chart showing chain of title).]

53.    Under Hawaii law, in order to allege that a party is not a bona fide purchaser, the complaint must allege that the purchaser had notice that the *transferor* acquired title by fraud, or had notice of litigation between the claimant and the *transferor.  See, e.g., Tilley*, 2018 WL 1415171, at \*13 (citing *Akagi v. Oshita*, 33 Haw. 343, 347 (Haw. Terr. 1935)).  The FAC fails to even mention the transferors of any of the subject properties, let alone allege that the current property owners had knowledge related to the transferors of either property.

54.    The current property owners had no duty to look back beyond the title presented to them by the immediate grantors of the properties.  *See Packaging Products Co., Ltd. v. Teruya Bros., Ltd.*, 574 P.2d 524, 528 (Haw. 1978)

30

(explaining that purchaser was "not required to look beyond its grantor's certificate, and its knowledge, actual or constructive, of the earlier bill of sale would have no effect upon its status as a good faith purchaser for value" of the property).

55.    These facts further set this action apart from recently remanded cases in which the court remanded the quiet title claim causes of action based on the "possib[ility]" that the current property owners and mortgagees did not constitute bona fide purchasers.  [*E.g. Carpenter*, Civil No. 19-0056 LEK-RT, Dkt. 37.]  In *Carpenter*, the defendants to the quiet title claim were current homeowners who acquired the properties from the foreclosing mortgagees.  [*Id.*]  In comparison, many of the QTE Defendants in this case were removed from the foreclosure auctions by numerous subsequent transactions.  Likewise, the courts in the recently remanded cases never considered how subsequent transfers impact the inquiry notice analysis for bona fide purchasers, and the parties did not brief the issue.

56.    Accordingly, Plaintiffs' allegations that the current property owners had inquiry notice is rendered even less acceptable because they were removed from the alleged wrongful foreclosure.

57.    Therefore, because Plaintiff does not have any viable claim against the current owners of the properties at issue (or against their mortgagees), the QTE Defendants are fraudulently joined.

## V.   THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

58.   The removing defendant bears the burden of proof by a preponderance of the evidence that the amount in controversy exceeds $75,000.  *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).  "When the amount in controversy is not specified in the complaint, the court may consider the facts alleged in the complaint as well as in the notice of removal."  *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002); *see also Del Real v. HealthSouth Corp.,* 171 F. Supp. 2d 1041, 1043 (D. Ariz. 2001) (where the state court complaint does not specify the amount in controversy, the removing defendant need only provide evidence establishing that it is more likely than not that the amount in controversy exceeds the federal jurisdictional requirements; to determine subject matter jurisdiction, the court may entertain extrinsic evidence, weigh evidence and if necessary resolve factual disputes).  In addition, "the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated."  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (internal citations omitted).

59.   The amount in controversy may be established by the value of the property or the face amount of the mortgage debt at issue.  *See Reyes v. Wells Fargo Bank, N.A.*, 2010 WL 2629785, at *14 (N.D. Cal. June 29, 2010).  "Where a

ImanageDB:4919910.3

party seeks equitable and/or injunctive relief, including declaratory relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Id.* at *12-13 (N.D. Cal. 2010). "If the primary purpose of a lawsuit is to enjoin a bank from selling or transferring property, then the property is the object of the litigation." *Id.; see also Zepeda v. U.S. Bank, N.A.*, 2011 WL 4351801, at *3 (C.D. Cal., Sept. 16, 2011) ("In the present litigation, Plaintiff undeniably requests both declaratory and injunctive relief in regards to Defendants' power of sale over Plaintiff's property. As such, the amount in controversy should be measured by this power and will therefore be equivalent to at least $308,000 [amount of mortgage]."); *Leonard v. Enter. Rent-A-Car*, 279 F.3d 967, 973 (11th Cir. 2002) (holding that "[t]he value of injunctive or declaratory relief for amount in controversy purposes is the monetary value of the reimbursement object of the litigation that would flow to the Plaintiffs if the injunction were granted").

60. The amount in controversy in this case, exclusive of interest and costs, exceeds $75,000.00. In the Complaint, Plaintiff does not make a specific demand for a damages amount, but Plaintiff seeks damages amounting to the "market value of the property, interest on that sum, lost rental value and sums expended by Plaintiff in the acquisition and/or improvement of their respective Properties and in

securing replacement property, and all other losses sustained." [FAC Prayer for Relief ¶ 3.]

61. According to public tax records, the property at issue in this action was assessed as being worth more than $75,000 in 2018 and 2019. [*See* Exhibit M.]

62. Thus, the "[t]he value of injunctive or declaratory relief . . . that would flow to the Plaintiffs" is in excess of $75,000. *See Araki v. Bank of Am.*, No. CIV. 10-00103 JMS/KS, 2010 WL 5625970, at *4 (D. Haw. Dec. 14, 2010) (finding diversity jurisdiction where "Plaintiffs are both Hawaii residents. BofA is alleged to be 'domiciled' in North Carolina, *i.e.,* is not a Hawaii citizen. CP Mortgage is alleged to be a citizen of Indiana. As for the amount-in-controversy, the SAC seeks, among other relief, to void a loan transaction of $283,000–exceeding the $75,000 threshold in § 1332.").

63. Additionally, "[t]he amount in controversy may include punitive damages." *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002); *Albarran v. Wells Fargo Bank*, No. SACV 11-00548-JVS (MLGx), 2011 WL 13228079, at *1 (C.D. Cal. May 26, 2011) ("The amount in controversy exceeds $75,000 in this matter because the value of the [plaintiffs'] property, the object of this litigation, is in excess of $75,000 and the [plaintiffs] seek unlimited punitive damages.").

ImanageDB:4919910.3

64.     Plaintiffs claim they are entitled to punitive damages.  [FAC ¶ 30.] Accordingly, because the value of Plaintiff's properties exceeds $75,000 and he seeks unlimited punitive damages, the amount in controversy requirement has been satisfied.

65.     Although BANA and MERS deny that Plaintiff is entitled to any relief, the foregoing demonstrates that the amount in controversy in this action exceeds $75,000, exclusive of interest and costs, and that the amount in controversy requirement is therefore met.

## VI.     OTHER PROCEDURAL REQUIREMENTS ARE SATISFIED

66.     Consent to removal by fraudulently joined defendants is not required. *United Computer Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002). Accordingly, consent from the QTE Defendants—the other co-defendants in this action—is not required.[2]

67.     To the extent this Court rejects the fraudulent joinder argument, BANA and MERS are not aware that any co-defendants impacted by the misjoinder argument have been served with the FAC.

---

[2] As noted above, "Doe Defendants" are disregarded for purposes of diversity jurisdiction and thus their consent is not required.

68.    The United States District Court for the District of Hawaii embraces the First Circuit Court of Hawaii, which is where the Complaint was filed.  Thus, venue is proper in this Court. *See* 28 U.S.C. §§ 1441(a), 1446(a).

69.    The filing of this Notice of Removal is timely under 28 U.S.C. § 1446(b).  MERS was served with the original Complaint on June 3, 2019. BANA has no record of service of the Complaint.  While opposing counsel provided a courtesy copy of the FAC to counsel, neither BANA nor MERS have been served with the FAC.  This Notice of Removal has been filed within thirty (30) days of service of the original Complaint on MERS.

70.    BANA and MERS will give written notice of the filing of this notice of removal to all parties as required by 28 U.S.C. § 1446(d) and will file a copy of this Notice of Removal with the State Court as further required by that section.

71.    Removal to this Court does not waive MERS or BANA's right to assert any defense in this matter, including, but not limited to lack of service, improper service or lack of personal jurisdiction and/or venue. Exhibit 1 attached hereto constitutes all of the pleadings served on Defendants BANA or MERS in the State Court Action as of the filing of this Notice of Removal and the courtesy copy of the FAC provided to counsel.

ImanageDB:4919910.3

# VII. CONCLUSION

Defendants BANA and MERS respectfully give notice, and respectfully pray, that this action be removed to this Court and pray further that this Court issue all necessary orders and process and grant such other and further relief as in law and justice they may be entitled to receive.

DATED:  Lihue, Hawaii, July 3, 2019.

CADES SCHUTTE
A Limited Liability Law Partnership


*/s/ Allison Mizuo Lee*
PATRICIA J. MCHENRY
ALLISON MIZUO LEE

Attorney for Defendant
BANK OF AMERICA, N.A AND
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.

ImanageDB:4919910.3